## Martin v. Edison Light and Power Company.

*Negligence—Electric light companies—Inspection of electric light wires.*

1. Electricity is a dangerous agency, and those employing it are required to exercise the highest practical degree of care.

2. It is the duty of an electric light company to inspect its wires, and failure to do so is negligence.

*Practice, C. P.—Statement of claim—Trespass—Striking off statement—Redundant and verbose averments.*

3. If a statement of claim in trespass sets forth facts which the defendant is required to meet at the trial in such language as can be understood and answered by an affirmance or denial of the negligence, the results and the damage described, such statement will not be stricken off, even though the averments be verbose and redundant.

Motion to strike off the plaintiff's statement. C. P. York Co., April T., 1924, No. 86.

*Cochran, Williams & Kain,* for motion.

*Herbert V. Quail, J. Fred Schaffer* and *R. P. Sherwood,* contra.

Ross, J., July 7, 1924.—The suit is brought in trespass. The statement alleges carelessness on the part of defendant corporation, which caused an injury to Russell E. Martin, a minor son of William T. Martin, for which injury they, the plaintiffs, seek to recover damages from the defendant.

The allegations of carelessness and injury alleged in the statement are worded as follows:

"4. The defendant, the Edison Light and Power Company aforesaid, on the 20th day of July, 1922, and long prior thereto, owned, maintained, operated and controlled a certain system of wires, transformers and appliances in the City of York, Pennsylvania, on a certain public street in said city, called and known as Clark Alley, which were hung and suspended over, along and upon certain poles owned, maintained and controlled by said defendant on and over said Clark Alley as aforesaid.

"5. On July 20, 1922, and long prior thereto, the defendant maintained, owned, controlled and used in connection with its system of wires, transformers and appliances a certain pole, numbered B19, which pole was located upon said Clark Alley, a public street near the corner of West Street, in the City of York as aforesaid, and to which pole certain wires, transformers and appliances of the defendant were attached.

"6. That some of the wires attached to said pole B19 were, on July 20, 1922, and long prior thereto had been, what are known as primary wires, and were used by defendant to transmit approximately 2300 volts of electricity. The said primary wires, on the 20th day of July, 1922, were, and long prior thereto had been, defectively insulated.

"6½. The said transformer attached to said pole B19 was, on the 20th day of July, 1922, and long prior thereto had been, used to transform a primary current of electricity (about 2300 volts) to a secondary current of electricity (about 110 volts).

"7. That some of the wires attached to pole B19 were, on July 20, 1922, and long prior thereto had been, what are known as secondary wires, used by defendant to transmit approximately 110 volts of electricity for commercial lighting. The said secondary wires, on the 20th day of July, 1922, were, and long prior thereto had been, defectively insulated.

"7½. The said transformer attached to said pole B19 was, on the 20th day of July, 1922, and long prior thereto had been, defective.

"8. On the 20th day of July, 1922, and long prior thereto, a certain uninsulated copper wire was attached to defendant's pole B19, located, as aforesaid, on Clark Alley, a public street in the City of York, Pennsylvania.

"9. On the 20th day of July, 1922, and long prior thereto, the uninsulated copper wire, mentioned in paragraph 8, was broken and hung, attached to defendant's pole B19 as aforesaid, in such manner that said uninsulated copper wire was dangling in the air within the limits of Clark Alley, one end of said copper wire being two feet from the ground or surface of said highway.

"10. On the 20th day of July, 1922, the said broken, hanging, uninsulated copper wire attached to defendant's pole B19 was in contact with defendant's appliances, also on said pole B19, and said broken, hanging, uninsulated copper wire was charged with a high and dangerous current of electricity, which was communicated to the said broken wire from defendant's wires, transformers and appliances then attached to defendant's pole B19, located on Clark Alley, a public highway in the City of York, Pennsylvania, as aforesaid.

"10½. The defendant did not, prior to July 20, 1922, properly inspect and repair its primary and secondary wires and its transformer attached to said pole B19.

"10¾. The defendant did not, prior to July 20, 1922, properly inspect its pole B19 and repair or remove therefrom the said broken, hanging uninsulated copper wire so attached to said pole B19.

"11. That defendant knew, or by reasonable and proper inspection should have known, the dangerous position of said broken, uninsulated copper wire attached to its pole B19 as aforesaid, as also the aforesaid defective condition of its primary and secondary wires and its transformer attached to said pole B19, and the danger of injury to the traveling public, particularly minors of tender age, lawfully using said highway by coming in contact with said broken, uninsulated copper wire on pole B19 as aforesaid, charged with a high and dangerous current of electricity from defendant's wires and appliances.

Martin v. Edison Light and Power Company.

"12. Russell E. Martin, a minor and infant of tender years, to wit, eight years of age, on the 20th day of July, 1922, passed over and along said Clark Alley, using due care on his part, and while traveling on foot along said Clark Alley as aforesaid, he, the said Russell E. Martin, came in contact with the said hanging, broken, uninsulated copper wire attached to defendant's pole B19 as aforesaid, charged, as aforesaid, with electricity from defendant's wires and appliances.

"13. Russell E. Martin aforesaid, by reason of his coming in contact with the said hanging, broken, uninsulated copper wire, as hereinbefore set forth, was greatly shocked, stunned and the right hand of the said Russell E. Martin and other parts of his body were severely burned and injured.

"14. By reason of the burns so received by Russell E. Martin, as hereinbefore set forth, the third and fourth fingers of the right hand of him, the said Russell E. Martin, were amputated at or near the knuckle joints. The tendons and muscles of the thumb, index and second fingers of the right hand were so severely burned and injured that the thumb, index and second fingers of the said right hand of him, the said Russell E. Martin, have become ankylosed and are permanently stiff, and the said Russell E. Martin has suffered the total loss of the use of his right hand.

"15. By reason of the burns so received by Russell E. Martin, he, the said Russell E. Martin, was permanently injured and maimed, disfigured and incapacitated for the ordinary duties of life.

"16. By reason of the burns so received by Russell E. Martin, he, the said Russell E. Martin, suffered great bodily pain, and still continues to suffer such pain. The said Russell E. Martin, by reason of the said injuries, suffered, and will continue to suffer during the remainder of his life, great mental anguish."

The defendant has filed a motion to strike off the statement. The reasons upon which the motion to strike off are based are worded as follows:

"1. Because the said plaintiffs in the said statement do not set forth in a concise and summary form the material facts upon which the said plaintiffs rely, in that the paragraphs of said statement, after paragraphs "1" and "2," are *verbose* and *redundant*.

"2. That said statement contains no averment that the wires which they allege 'dangled' from said pole B19 was the defendant's wire or that said wire was attached to said pole with the knowledge and consent of the defendant, or any knowledge of the fact that any wire 'dangled' from said pole."

The first reason cannot be sustained because, however *"verbose"* or *"redundant"* the paragraphs referred to may appear to the defendant, they state the facts which the defendant is required to meet at the trial in such language as can be understood and answered by an affirmance or denial of the negligence, the results and the damage described, or meet and refute the charges at a trial. If more relevant information is required, a more specific statement of facts can be called for.

The Practice Act of 1915 does not require the courts to regulate the rhetoric used in the construction of pleadings. *"Id certum est quad certum reddi protest."* If the language used in the statement is plain enough to be understood and answered, or met by a denial or rebutting evidence at a trial so that an issue can be formed, we think the requirements of sections 5 and 9 of the Practice Act of 1915 is complied with.

We cannot sustain the second reason, because public service corporations which use public highways, on or over which they hang or suspend charged wires, should inspect.

"Electricity is a dangerous agency, and those employing it are required to exercise the highest practical degree of care."

"The duty to inspect electric wires is clear, and failure to perform it negligence:" Sebring v. Bell Telephone Co., 275 Pa. 131.

And now, July 7, 1924, the motion to strike off plaintiff's statement is dismissed.